UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HONORIA ETHEL CARRILLO                     CIVIL ACTION

VERSUS                                     NO. 05-3083

JO ANNE B. BARNHART,                       SECTION "R" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

### FINDINGS AND RECOMMENDATION

Plaintiff, Honoria Ethel Carrrillo, appearing pro se, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act.  42 U.S.C. §§ 405(g), 4232, 1381a.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, Record Doc. No. 13, plaintiff filed a memorandum of facts and law. Record Doc. No. 14.  Defendant filed a timely reply memorandum.  Record Doc. No. 17.

I.    <u>PROCEDURAL HISTORY</u>

Carrillo filed an application for SSI on January 30, 2004 and for DIB on August 19, 2003, alleging disability since June 24, 2003 because of a spinal fusion, a spinal injury caused by a 1988 motor vehicle accident, and arm and leg pain.  (Tr. 45-47, 53, 123-24).  After her applications were denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 20, 2004.  On April 26, 2005, the ALJ denied plaintiff's applications.  (Tr. 14-17).  After the Appeals Council denied review on June 3, 2005 (Tr. 5-8), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.   <u>STATEMENT OF ISSUES ON APPEAL</u>

Plaintiff, appearing pro se, contends that the ALJ made the following errors:

A.    Carrillo has new evidence that proves she has a congenital spinal defect and carpal tunnel syndrome in both hands, a pinched nerve in her neck and arthritis in her entire spine.

B.    The ALJ and the consultative examiner erred by failing to order an x-ray of plaintiff's lumbar spine.

C.    The ALJ erred in finding that Carrillo's allegations were only partially credible without making adequate effort to verify the existence of her lower back condition.

D.    The ALJ erred by misstating plaintiff's testimony concerning her attempts to find work.

2

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Plaintiff's degenerative disc disease of the cervical spine is a severe impairment, which does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

2.    Carrillo's allegations regarding her symptoms and limitations are partially credible.

3.    She has the residual functional capacity to perform light work, to lift 20 pounds occasionally and frequently, to sit for eight hours out of an eight-hour day and to stand and/or walk for a combined total of eight hours in an eight-hour work day.

4.    Plaintiff is an individual closely approaching advanced age with two years of college education and past relevant work as a store clerk, housekeeper, deli clerk, store manager and cashier.

5.    She has the residual functional capacity to return to her past relevant work.

(Tr. 17).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Waters v. Barnhart, 276 F.3d 716, 716 (5th

3

Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 389 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Loza</u>, 219 F.3d at 393; <u>Spellman</u>, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Id.</u>

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1022 (5th Cir. 1990); <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  <u>Newton</u>, 209 F.3d at 452; <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

4

To be considered disabled and eligible for DIB and SSI,[1] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.   20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2004).   The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.   Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]   The five-step

_____

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.   Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

[2]The five-step analysis requires consideration of the following:
    First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.   20 C.F.R. §§ 404.1520(b), 416.920(b).
    Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.   Id. §§ 404.1520(c), 416.920(c).
    Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.   Id. §§ 404.1520(d), 416.920(d).
    Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.   If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.   Id. §§ 404.1520(e), 416.920(e).
    Fifth, if it is determined that the claimant cannot return to his or her former employment, then

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history."  Martinez, 64 F.3d at 174.

B.    Factual Background

Plaintiff appeared pro se at the hearing and confirmed that she waived her right to representation.  (Tr. 138).  Before she was sworn to testify, she objected that the record

---

the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

did not contain reports from Charity Hospital from 1995.  The ALJ explained that medical records from 1995, long before her alleged onset date of June 2003, were not necessary for a decision.  (Tr. 139).  Carrillo stated that she had been in an automobile accident in 1988 and she believed that doctor's reports from 1995 would confirm the problems that she had then, that she still has and that have been giving her more pain lately.  She said that the pain had increased when she was working full time, even though the work was light duty, and that she could not continue working because her arm hurt too much and she could not even lift the coin drawer to give change to customers.

Carrillo objected to the ALJ that the consultative examiner had refused her request to take any x-rays and that the doctor had told her that x-rays were not necessary.  She also objected that the doctor's examination was not complete, that he barely looked at her, that all he asked her to do was to "walk from here to there" and that the examination was at 9:00 a.m. before she had done anything for the day.  (Tr. 140).  She stated that she has pinched nerves all over her spine and has pain even if she does a few dishes.  She said the doctor should have examined her after she does something, but he only made her walk two or three steps, and then told her he had enough evidence for his report.

Plaintiff further stated that, when she had a cervical spine x-ray on June 30, 2003, the doctor did not order a lumbar spine x-ray out of concern that she might be pregnant. (Tr. 141).

7

After Carrillo was sworn, she testified that she lives in Jefferson, Louisiana, and was 51 years old on the date of the hearing.  She said she had completed two years of community college in computer programming, but the computer language she had learned is now obsolete and she never worked with it.  (Tr. 143).

Plaintiff stated that she is divorced and has an 18-year-old son who attends high school.  She said she lives with her daughter and three-year-old grandson and that her daughter receives unemployment benefits.  She said she receives food stamps.  Carrillo said she had been arrested once, a long time ago.  (Tr. 144).  She explained that her employer had charged her with hitting the employer, but she proved that she was innocent.

Carrillo testified that she last worked on June 27, 2003 as a cashier in a souvenir store.  She said that she did not have to do heavy work, like carrying boxes, because she had a helper to do that.  She said she only put away small things and took care of the customers.  She stated that she worked at two souvenir stores for a combined three and one-half years.  She testified that she was allowed to sit down a lot because her employers knew she had a problem.  (Tr. 145).

Plaintiff stated that she worked as a part-time housekeeper for one family for two and one-half years before working at the souvenir stores.  She stated that she previously worked for about six weeks as a deli clerk at Schwegmann's grocery store.

8

Carrillo said that pain in her legs and back prevents her from working.  She testified that she has headaches all the time and cannot sleep at night because of cramps in her legs.  She said she usually gets up late in the morning because she is awake until 4:00 a.m. sometimes.  (Tr. 146).  She stated that she has been taking Tylenol because she does not have enough money to pay a doctor to give her a prescription since she has not worked for 18 months.

Plaintiff said she had been to Charity Hospital, but she did not get much help and was billed for the visit.  She stated that Charity does not want to see her if she does not pay and she does not have the money to pay.  She said she was only given a prescription for arthritis to last for a few days, so she did not go back.

Carrillo testified that her lower back has been damaged since she was born and that it gives her pain all the time.  She said the car accident in 1988 injured her upper back, which gives her blurred vision and headaches all the time.  She said her right arm does not work properly and goes numb.  She stated that she is in pain if she embroiders for more than a few minutes.  (Tr. 147).  She said she takes two 500-mg. Tylenol every four hours for pain and that it helps a little.  Plaintiff testified that she has had headaches since the accident but that they worsened when she started working full-time.

Carrillo said that, after showering and getting dressed, she spends her days resting, watching television and doing a few light chores.  She said she goes back to bed after that

9

because her pain requires her to lie down.  She testified that, several years ago, her back pain was treated with analgesics and muscle relaxers because sometimes she could not even walk.  (Tr. 148).  She stated that she cooks a little bit and sometimes does a little dusting and vacuuming.  Carrillo testified that her daughter drives her to the grocery store so she can shop.  She said she has not had a driver's license since 1995 and she takes the bus.

Plaintiff testified that she stopped working as a cashier because the store where she was working closed.  She stated that she was able to work in that store because business was slow and she did not have much to do.  (Tr. 149).  She said she was transferred to another store after that one closed and she could not handle the job.  (Tr. 149-50).  She said she suffered every day with headaches, pain in her legs and nausea most of the time, so she only worked at the second store for one month before they laid her off because she could not function in the job.  Carrillo explained that she had the same job duties at the second store as at the first, but there was a larger volume of work with more customers.

Plaintiff stated that she can probably lift 10 pounds if she does not have to carry it.  She said the pain in her back and weakness in her arms prevents her from carrying the weight.  She testified that she cannot stand for more than 5 minutes at a time and that she can walk with pain for about 20 minutes.  (Tr. 150).  She estimated she could walk about 6 blocks in 20 minutes and could sit for about 20 minutes.

10

Carrillo testified that she has blurred vision and has not been treated for it, except that the doctor told her she needed reading glasses.  She said the glasses help a little bit but she still does not see well even with the glasses.  She stated that she becomes strongly nauseated if she stands for more than five minutes.  She said her doctor told her this was caused by pressure on the nerves.  Carrillo said Tylenol makes her sleepy most of the time.  (Tr. 151).

Plaintiff testified that the last time she saw a doctor for lower back pain was about three months earlier when she went to the East Jefferson General Hospital emergency room.  She said she had been walking outdoors for a little while and could not breathe when she got home.  She testified that her head was hurting terribly and she felt as if something was stuck in her throat.  She said she took Tylenol and laid down, but she felt like she was going to die, so she called the ambulance and went to the hospital.  She said the emergency room doctor gave her some medicine.  Upon the ALJ's observation that it did not sound like she had complained of lower back pain at this visit, Carrillo stated, "It was a strong headache here in my back and I also have pain here in my neck."  She testified that the doctor gave her allergy and pain medication.  She stated that she has also been to the Ochsner Hospital emergency room at least twice.  She could not recall the dates.  She said the most recent visit was several months ago, when she could not walk, and she was given some medicine.  (Tr. 152).

11

Plaintiff stated that she cannot work full-time and that she has looked for a job with light duties but no one wanted to hire her "because they know why they count me out." She said she wants to work because it is healthier for her, but she needs help to find a job such as the ones the vocational expert identified. (Tr. 155). She testified that she had received some information about vocational rehabilitation at the unemployment office, but that the vocational rehabilitation service never returned her call after she called. (Tr. 155-56). She said she had applied for work as a cashier or salesperson at several places where she did not think she would have to do much heavy work, but no one hired her. (Tr. 156).

C.   Vocational Expert Testimony

A vocational expert, Patricia Knight, testified that Carrillo's past work as a housekeeper was medium exertional level, with an SVP skill level of 2 to 3.[3]  She said

---

[3]"SVP" stands for Specific Vocational Preparation, which

is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.
. . . .
The following is an explanation of the various levels of specific vocational preparation:

| Level | Time |
|---|---|
| 1 | Short demonstration only |
| 2 | Anything beyond short demonstration up to and including 1 month |
| 3 | Over 1 month up to and including 3 months |
| 4 | Over 3 months up to and including 6 months |
| 5 | Over 6 months up to and including 1 year |

12

that plaintiff's sales clerk and cashier jobs were light exertional work, both with an SVP skill level of 3, and her deli clerk job was light with an SVP of 2.  (Tr. 153-54).  Knight stated that plaintiff's cashier job, when she was able to alternate sitting and standing, probably fell more into the sedentary range.

The ALJ posed a hypothetical of a 51-year-old claimant with 2 years of college education and plaintiff's prior work experience, who can lift and carry 10 pounds occasionally and lighter weights frequently; sit for 20 to 30 minutes at a time for a total of 8 hours; stand and walk for 20 to 30 minutes at a time for a total of 6 hours; and occasionally bend, kneel and crawl; but should avoid climbing ladders and working at unprotected heights.  The vocational expert testified that such a claimant could perform Carrillo's past relevant work as a cashier in a souvenir store.  (Tr. 154).

The ALJ proposed a second hypothetical of the same claimant, except that she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk for at least 6 hours each during a work day; and occasionally crouch, kneel and crawl;

---

6       Over 1 year up to and including 2 years
7       Over 2 years up to and including 4 years
8       Over 4 years up to and including 10 years
9       Over 10 years

Dictionary of Occupational Titles App. C, ¶ II (4th ed. rev. 1991), avail. at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

and has no manipulation restrictions.  Knight stated that such a claimant could work as a sales clerk, cashier/checker or deli clerk.  (Tr. 155).

        D.      <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 15-16).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

        E.      <u>Plaintiff's Appeal</u>

        1.      *Carrillo's attempt to produce new evidence.*

Plaintiff contends that she has new evidence that proves she has a congenital spinal defect and carpal tunnel syndrome in both hands, a pinched nerve in her neck and arthritis in her entire spine.  She has not submitted any such evidence to the court or specified the relief she seeks.  The court assumes that she seeks a remand to allow the ALJ to consider the new evidence.

Even if plaintiff had submitted her allegedly new evidence to the court, this court may not issue factual findings on new medical evidence and may review such evidence only to determine if a remand is appropriate.  <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989).  Accordingly, the

court must determine whether the case should be remanded so the Commissioner may consider this allegedly new and material evidence.

The court may only remand for consideration of new evidence upon a showing that the evidence is new and material and that good cause exists for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Leggett, 67 F.3d at 567. "In addition, the new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." Id.

"New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, and whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003).

Plaintiff has submitted no explanation, much less a "proper explanation," why she could not obtain and submit the additional evidence to the ALJ before his decision, which was rendered four months after the hearing, Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989), or to the Appeals Council, which denied review more than a year after the ALJ's decision. Indeed, Carrillo affirmatively refused to submit evidence to the Appeals

Council (Tr. 9), despite the instruction on the appeal request form that she should do so if she had additional evidence.  (Tr. 7).

Furthermore, a medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand."  Leggett, 67 F.3d at 567.  Here, as in Leggett, Carrillo does not provide a satisfactory explanation for the absence of the evidence from the initial proceedings.  If the evidence consists of a new examination taken far outside of the period in which Carrillo applied for or was denied benefits, she offers no evidence that her current disability did not subsequently develop after her initial application or that it is not the result of the deterioration of a condition that was not previously disabling. Id.

Moreover, Carrillo has not demonstrated a reasonable probability that the new evidence would change the outcome of the Commissioner's decision, which applies only to the period of June 24, 2003 through April 26, 2005.  Thus, she fails in her burden of providing good cause for the absence of this evidence and may not use it as the basis for a remand.  The appropriate use for such evidence, if it establishes a new disability or the deterioration of a previously non-disabling condition, is to submit it as the basis for a new disability application.  Id.

16

2.       *The ALJ and the consultative examiner did not err by failing to order an x-ray of plaintiff's lumbar spine.*

Carrillo argues that the ALJ and the consultative examiner, orthopedic surgeon Frederick L. Keppel, M.D., erred by failing to order an x-ray of her lumbar spine, although she requested that Dr. Keppel order one.  She explained at the hearing that no lumbar spine x-ray had been taken in June 2003, when a cervical x-ray had been taken, because of the doctor's concern that she might be pregnant.

Plaintiff has the burden of proving her disability with sufficient medical evidence. Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991).  If she is unable to provide sufficient medical evidence, the ALJ may make a decision based on the information available.  Although a consultative examination may be necessary to develop a full and fair record, the decision to acquire such an examination is within the ALJ's discretion. Id. (citing 20 C.F.R. §§ 404.1516, 404.1517); Haywood v. Sullivan, 888 F.2d 1463, 1472 (5th Cir. 1989).

"Generally, the ALJ need only obtain further information when the record does not contain sufficient medical evidence of the impairment.  The ALJ need not order a consultative examination of a condition when there is no objective medical evidence that the claimant suffers from the particular condition . . . ."  Butts v. Chater, 78 F.3d 592, 1996 WL 103914, at *1 (9th Cir. Mar. 8, 1996) (citing 20 C.F.R. § 416.917) (emphasis

17

added).  In the instant case, there is not substantial, objective, medical evidence in the record that Carrillo suffers a severe impairment in her lower back.

Plaintiff presented to the emergency room at the Medical Center of Louisiana at New Orleans (hereinafter "Charity Hospital") on June 30, 2003, complaining of chronic back pain "on and off [for] a long time," since birth or an automobile accident in 1988, and of recent numbness in her right arm.  Physical examination revealed that her neck was supple and she had full range of motion in her lumbar spine.  A cervical spine x-ray revealed degenerative changes at C3-4.  The doctor diagnosed (1) degenerative joint disease and (2), because of a recent delayed menstruation, rule out pregnancy.  Carrillo was discharged with prescriptions for piroxicam[4] and amitriptyline,[5] no restrictions on her activities and instructions to return in one week for lab test results.  (Tr. 103-06).

On July 7, 2003, plaintiff returned to Charity Hospital for her test results.  She told the triage nurse that her pain was at a level of 2 on a scale of 1 to 10, which is described

---

[4]Piroxicam is the generic name for Feldene, "a nonsteroidal anti-inflammatory drug, [which] is used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis and osteoarthritis (the most common form of arthritis).  It is prescribed both for sudden flare-ups and for long-term treatment."  Physician's Desk Reference, available at http://www.pdrhealth.com/drug_info/ rxdrugprofiles/drugs/fel1173.shtml.

[5]Amitriptyline hydrochloride is the generic name for Elavil, which "is prescribed for the relief of symptoms of mental depression.  It is a member of the group of drugs called tricyclic antidepressants. Some doctors also prescribe Elavil to treat bulimia (an eating disorder), to control chronic pain, [and] to prevent migraine headaches . . . ."  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ ela1155.shtml.

on the preprinted scale as "hurts little bit."  (Tr. 100).  She had current complaints of stomach pain and heartburn only.  The doctor again diagnosed degenerative joint disease and told her to continue her prescribed medications.  The doctor also diagnosed gastroesophageal reflux disease and prescribed medication for that.  (Tr. 99).  No additional tests or x-rays were ordered and Carrillo was discharged without restrictions to return as needed.  (Tr. 101).

Plaintiff next sought medical treatment one year later, on July 30, 2004, when she presented to the East Jefferson General Hospital emergency room complaining of severe headache, unrelieved by Tylenol.[6]  She reported taking only over-the-counter pain medication.  The physician's review of her systems indicated that Carrillo had no other current complaints and all systems were normal, except that she reported a past medical history of chronic back problems, with "no new joint[7] or motor loss."  On physical examination, plaintiff had normal range of motion in her neck and all of her extremities. She had no obvious deformity in any extremity.  Neurological examination revealed "no focal motor or sensory loss, bilaterally symmetrical."[8]  (Tr. 134).  A chest x-ray and CT

_____

[6]Although plaintiff testified that she went to the hospital by ambulance, the medical record contains no indication of how she arrived at the emergency room.

[7]It appears that a word is missing here after "joint."

[8]There again seems to be a missing word after "symmetrical."

scan of plaintiff's head were negative.  (Tr. 132-33).  The doctor gave her Benadryl, intravenous Toradol[9] and intravenous Compazine[10] in the emergency room and prescribed Compazine upon discharge.  (Tr. 135).

Plaintiff was examined by consultative examiner Dr. Keppel on October 25, 2004. He reported that she walked with a normal gait, had full range of motion and no palpable spasm in her lower back, and had slightly less than a full range of motion in her neck. Her straight leg raising test was negative in both supine and sitting positions.  Her deep tendon reflexes were intact and symmetrical.  Neurological examination was grossly intact with no motor weakness or atrophy.  Carrillo reported that she had subjective decreased sensation in all fingers of both hands.  (Tr. 125).  Dr. Keppel reviewed her June 2003 cervical x-ray.  He found that Carrillo had some mild degenerative changes at C3-4.  He opined that her subjective decreased sensation might be consistent with possible carpal tunnel syndrome, and recommended further testing for that.  Dr. Keppel concluded that plaintiff "should be able to perform at least sedentary and light duty activities."  (Tr. 126).

---

[9]"Toradol, a nonsteroidal anti-inflammatory drug, is used to relieve moderately severe, acute pain."  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/tor1453.shtml.

[10]Compazine, generic name prochlorperazine, "is used to control severe nausea and vomiting. It is also used to treat symptoms of the mental disorder schizophrenia, and is occasionally prescribed for anxiety."  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/pro1097.shtml.

Accordingly, substantial evidence supports the ALJ's finding that Carrillo does not have a severe lower back impairment.  In the absence of any objective clinical findings of such an impairment, the ALJ was within his discretion not to order x-ray testing of plaintiff's lower back.  This assignment of error lacks merit.

> 3.   *The ALJ did not err in finding that Carrillo's allegations were only partially credible.*

Plaintiff argues that the ALJ erred in finding that her allegations were only partially credible, without making an adequate effort to verify the existence of her lower back condition.  As explained in the preceding section, substantial evidence supports the ALJ's finding that plaintiff does not have a severe back impairment and his decision not to order additional testing.

The ALJ found that plaintiff's subjective complaints of pain and functional limitations were not credible.  The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court.  Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required.  Falco, 27 F.3d at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476,

at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000).

A claimant's own reports of her symptoms, including pain, fatigue and dizziness, are insufficient to establish a medical impairment. Subjective complaints like these must be corroborated, at least in part, by objective medical evidence. 20 C.F.R. §§ 404.1528(a), 416.928(a), 404.1529(a), 416.929(a); Palomo v. Barnhart, No. 05-50722, 154 Fed. Appx. 426, 430 (5th Cir. 2005) (citing Wren, 925 F.3d at 128-29); Ukolov v. Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005); Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996); Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).

The ALJ explained that the medical evidence did not confirm the presence of a debilitating back condition. As described in the preceding section, substantial medical evidence supports that conclusion. In addition, Carrillo testified that she does some cooking, cleaning, shopping and watching television, and takes the bus. Substantial evidence supports the ALJ's finding that plaintiff's activities of daily living do not support her allegations of debilitating symptoms. Accordingly, this assignment of error lacks merit.

4.      *The ALJ did not misstate plaintiff's testimony concerning her attempts to find work.*

The ALJ stated that plaintiff "testified that she is looking for work, having applied for some cashier and sales jobs, but simply has not found employment yet."  (Tr. 16). Carrillo contends that the ALJ inaccurately summarized her testimony concerning her attempts to find work.

Plaintiff testified that she cannot work full-time and has looked for a job with light duties, but that no one wanted to hire her "because they know why they count me out." She said she wants to work but she needs help to find a job such as the ones the vocational expert identified.  (Tr. 155).  She said she had applied for work as a cashier or salesperson at several places where she did not think she would have to do much heavy work, but no one hired her.  (Tr. 156).

The ALJ's summary of this testimony, although brief, was not inaccurate. "[P]rocedural perfection in administrative proceedings is not required and procedural improprieties will constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the decision."  Hall ex rel. Hyman v. Apfel, No. 98-1727, 1999 WL 350082, at *2 (E.D. La. May 28, 1999) (Duval, J.) (citing Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988) (citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)); accord Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989).

The ALJ's failure to discuss plaintiff's testimony in more detail is not error that prejudices plaintiff's substantive rights, <u>Morris</u>, 864 F.2d at 335; <u>Sartain v. Apfel</u>, No. 99-1596, 2000 WL 193067, at *4 (E.D. La. Feb. 16, 2000) (Mitchell, J.) (citing <u>Mays</u>, 837 F.2d at 1364), because the ALJ's statement was not incorrect.

<u>CONCLUSION</u>

Carrillo has not carried her burden to show that new evidence warrants a remand in this case.  Substantial evidence supports the ALJ's decision not to order an x-ray of plaintiff's lumbar spine, his finding that her allegations were only partially credible and his summary of plaintiff's testimony concerning her attempts to find work.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

24

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __30th__ day of June, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

25